The first case on the call this morning, the only case on the call, is number 122558, Thounsavath v. State Farm, Agenda Number 7. Counsel, are you ready? And are you? You may proceed. Thank you. Please report. My name, excuse me, is Frank Stevens. I represent the Appalachian State Farm. This case involves the application of a named driver exclusion in automobile liability insurance policy and its application to a named insurer for underinsured motorist coverage. The automobile accident that gave rise to this claim occurred back in 2012. Ms. Thounsavath was a passenger in Clinton Evans' vehicle. It was not a vehicle that Ms. Thounsavath either owned or insured. It was Mr. Evans' vehicle. Does that make any difference, Counsel, under the clause as written in this case? No. No. I want to focus on that for a second before you get into the public policy arguments as framed by the briefs. Just looking at the wording of that clause, as I understand it, under the exclusion, your exclusion, plaintiff cannot recover for any bodily injury, loss, or damage while any motor vehicle is operated by Clinton Evans. Is that right? It's right. Okay. So let me just give you a couple of hypotheticals on that clause to tell me where you stand on it. If plaintiff is riding in a motor vehicle with Clinton Evans and Clinton Evans' vehicle is hit by another driver where the accident is entirely at the fault of the other driver, 100% at fault, if the other driver is underinsured, can plaintiff claim underinsured motorist coverage based on that accident? That is the final language of their policy. Right. And what if plaintiff is driving, and we're just focusing on the language, right? And you're right. Under the language of that policy, it doesn't matter. Clinton Evans driving, no underinsurance motorist coverage, right? Right. All right. Now, this one is going to sound a little ridiculous, but I'm just looking at the language of the policy. What if plaintiff is driving her own vehicle, and she's hit by another driver, and at the same time that plaintiff's accident occurs, Clinton Evans is operating a motor vehicle, although Clinton Evans is nowhere near the plaintiff. He's in another motor vehicle. It could be 100 miles away for all we know. Isn't plaintiff barred from recovering under the plain language of that policy if the other driver is uninsured or underinsured since Clinton Evans is operating a motor vehicle? I know it sounds ridiculous, but the language of the policy only says if Clinton Evans is operating a motor vehicle. It doesn't say whose motor vehicle. It doesn't say she has to be in the car. It just says, so would State Farm have recourse in saying no underinsurance motorist coverage under the language of the policy? I don't believe so. And why would that be? That would be a different situation. I mean, it says, it is agreed we shall not be liable under this policy while any motor vehicle is operated by Clinton Evans. Well, I think first and foremost, the first part of the exclusion talks about not being liable, no liability shall attach. There's no liability there. If he's driving 100 miles away, there's no liability. There can't be any liability. Well, there's certainly liability with respect to my example with respect to the underinsured motorist in that case. Is there anything in the policy definitions which defines any motor vehicle as any motor vehicle in which plaintiff is a passenger? No. So it would seem to me as written, I mean, would you agree that it's a very poorly written clause? I've looked at over six cases involving the named driver exclusion enforced by Illinois courts, starting with Phelan, which back in 1974, I don't think the insurance industry has done a very good job with any of the named driver exclusions since then. They all seem to have some wiggle room. But as a whole, I don't think State Farm's policy exclusion is a bad example or is a bad wording of the exclusion. Well, I suppose under the second example, I hate to cut you off, but I suppose under the second example, you're left with the fact that State Farm probably would not deny coverage. But, you know, we're taught to look at first the plain reading of a statute. And I think as it affects public policy, I don't see anything in, I'll be very, if I haven't been blunt enough already, I see nothing in that clause that would at least prevent, that would in any way prevent State Farm from, in your first example, like you've even admitted, where he's driving and the other driver's 100% liable, she can't go after her underinsured motorist coverage. You said that that clause would prevent that. But even the ridiculous example I gave, maybe it wouldn't go anywhere, but there's nothing in the clause or the contract would prevent State Farm from saying, hey, it said Clint Evans driving. Yeah, he happened to be driving on a different street, but he was driving. That's what the clause says. Justice, I still, I'd have to disagree. I mean, I think the fact that they preface it with liable and liability makes it clear that Clint Evans has to be charged with some kind of liability for causing the accident. If he's not, then, if he's 100 miles away, then I don't, I don't think this has anything to do with this. Well, you said it wouldn't matter if Clint Evans was, if the other driver was 100% liable in the first example, you said it wouldn't matter. I don't, yes, and that's true because of that, there's an accident. And now the question becomes, is there liability? And as you and I both well know, liability isn't determined by the insurance company. It's not determined by the plaintiff's counsel. It's determined by juries. And what State Farm is saying, even if it's clear, 100% clear, 37 years of experience have taught me that lawsuits still get filed when the liability is clear. And what State Farm is saying is, if there is an accident in which Clint Evans is involved, we're not providing any coverage. You may think the other driver is 100% at fault. Somebody may think they're 50% at fault. We're not going to appoint attorneys. We're not going to extend coverage. We're not going to honor that claim. And that's the reality of the clause. We don't want anything to do with any claim when Clint Evans is involved. After 37 years, you know that there's a lot of cases which have settled for policy limits of $20,000 by low-level insurance, $20,000. They pay the complete portion of their or they pay the policy limits on a case. And if the policy limits are paid by an underinsured driver, that clause, 100% or not, would still be, you could still use the clause to say no underinsurance motorist coverage. You would still use that clause to say that it's true. But if you did not have that clause, what would be the solution for that? $20,000 paid by the torque user's insurance company, arbitration. Now the insurance company is required to appoint an attorney to defend the arbitration. They have to hire an arbitrator. They have to pay for half of the arbitrate of the independent arbitrator. They have to pay all the costs and expenses. And what State Farm is saying is if Clinton Evans is involved in any accident, we're not providing coverage. Mr. Stevens, how significant is it that the legislature hasn't expressly allowed these types of exclusions for UIM coverage? I don't think it's significant for several reasons. The first reason is since 1974, the Illinois courts have applied named driver, I'm sorry, named driver exclusions to uninsured and underinsured motorist coverage. Phelan versus Heritage is the first example. If the Illinois legislature thought that you couldn't have a named driver exclusion for uninsured or underinsured motorist coverage, they could have addressed that, and they didn't. That remains good law. It's been good law now for four decades. So I don't think that's all that – I don't think it's significant. But we speak to that issue, too, Justice, in our brief. And just because the legislature hasn't addressed a specific policy provision or a specific coverage question doesn't mean that the insurance company doesn't have a right to put reasonable restrictions into its policy. And it's really – it would be – I think, Justice, it would be an enormous task for the legislature to address every single possible situation that could arise where exclusion would be allowed or where exclusion would not be allowed. The statute would explode in terms of its size and its breadth. I don't believe there's any significance to the fact that, unlike the Mandatory Insurance Act, which does have a named driver exclusion authorization, that the uninsured and underinsured statutes don't. And as I said, the courts have seemed to have no problem enforcing those exclusions against those coverages. Counsel, if the plaintiff had been a pedestrian and had been hit by a car driven by Mr. Evans, would her underinsured motorist coverage kick in? No. No. There would be no coverage for – Any event involving – Why didn't – obviously the intent was for being in a car driven by Clint Evans, right? I think certainly. Any car that Clint Evans operated, not only Ms. Toon Savage's car but any other car, but as the Justice just pointed out, as a pedestrian standing in her driveway, they just didn't want anything to do with Clint Evans. They decided that Clint Evans was not a risk that they wanted to insure. And they told her that. And she had an option. She could either agree to that, which she did, or she could have walked away and gone somewhere else. Mr. Stevens said that she's required to have underinsured motorist insurance. She is required to have underinsured motorist coverage. But to say that someone is required to have underinsured motorist coverage means that they are entitled to collect under any circumstance is contrary to the law. You can look at, for example, Villicana. That's the argument that the Plaintiffs' Council made in Villicana. We have underinsured motorist coverage. Pay us. And this Court said no. Reasonable restrictions on underinsured motorist coverage are allowed as long as they do not violate the public policy of the state. Reasonable restrictions? Reasonable restrictions. And I'd suggest to you if you're- But the legislature didn't think to include this particular specific situation. They did not. But the legislature, since 1974, has had an opportunity to address this. And if they thought heritage, Phelan versus heritage was decided incorrectly, they've had since 1974 to address it. But that has been the law. If you look, there's case after case after case that applies named driver exclusions to uninsured and underinsured motorist coverage here in Illinois. This isn't something novel that State Farm is trying to sneak by. This is something that has a long precedent of acceptance and enforcement. I don't know that I gave you a chance to answer. Does the policy define any motor vehicle as any motor vehicle in which she was a passenger? Or does any motor vehicle mean any motor vehicle? The policy does not define any motor vehicle. So, again, not to be redundant, any motor vehicle is operated by Clinton Evans, and the policy does not define that that only applies to a vehicle driven by Clinton Evans when the plaintiff is a passenger. I'm just talking clear language of the statute, not what was intended. Or I mean the clause. With all due respect, Justice, I don't think that's a clear reading of the statute. I pointed out before that it's where Clinton Evans is charged with being liable. In your example, he's 100 miles away. There's no reasonable person on earth who could allege that he was liable or any liability would attach to that. That just doesn't apply. I mean, I think if you're asking me could the policy have been written more clearly, yes. But is it sufficient for purposes of this case? I think it is. I'd like to talk just for a moment about a theme of my brief, which is Ms. Tusanato. The trial court and the appellate court all claim that this decision in her favor is consistent with American Access v. Reyes. And they claim that the public policy articulated by this court in American Access v. Reyes is the same public policy that she's trying to invoke here. It's not. The public policy in Reyes was to protect the general public. It was meant to protect the general public when they weren't a party to the contract and they had no decision in the contract. That's exactly the opposite situation here. Ms. Tusanato knew that there would be no coverage. She chose to sign these endorsements. She is not the general public. She is a party to the contract. And as I argue, there are case after case after case in this state, Supreme Court cases, Villicana, Foos, Luchtgefeld, that all say that it is antithetical to our system of justice to allow a named insurer to claim more coverage for themselves than they are willing to extend to the general public. This policy endorsement, this exclusion, would prevent anyone from making a claim, from State Farm providing any coverage for a claim made by anyone else when Mr. Evans is responsible. Ms. Tusanato says, fine, I'll agree to that, but it doesn't apply to me because I'm the named insurer. In this situation, he was the driver of her car, which you and State Farm had insured. Is that correct? He was the driver of his own car. He was not the driver of her car. But she was a passenger. She was a passenger. If she had not been a passenger in the car, I think to follow up on Justice Thomas' question, if she were driving her own car and he was driving another car and was underinsured, you're saying this clause would prevent her from getting underinsured motorist coverage? Yes. If there was a two-car accident, her car and Mr. Evans' car, yes, there would be no coverage. She could collect whatever she could collect from Mr. Evans' policy, which is exactly what she did here, but she would not be entitled to make a claim for underinsured motorist coverage under her own policy. In conclusion, I think if this case does not invoke the decision, in my opinion, in American Access v. Raids, it really doesn't have much, if anything, to do with that. This is not liability coverage. We're talking about underinsured motorist coverage. The public policy articulated in Raids is very specific. It should protect the general public for their damages. It has nothing to do with Ms. Tomsato. The appellate court, I believe, was incorrect when they came to the conclusion that it somehow fit under the Raids public policy expression. I think that the fact that Ms. Tomsato has decided that she has a special place above everybody else in terms of what she can collect simply is a point to our system of justice. She should not be entitled to collect for her own damages when she was unwilling to extend the same kinds of coverages to the general public. Thank you. Good morning. Eric Harker on behalf of the Appellate Council. May I please record? I think I'd like to start by picking up on the thread that counsel just argued, which was argued repeatedly in his brief about her somehow offering less to the general public than she was willing to accept herself. I don't think that's an accurate argument. Ms. Tomsato bought a liability insurance policy with a $100,000 limit, and pursuant to the statute, she also got a $100,000 limit uninsured policy and a $100,000 uninsured policy. In other words, she offered the same coverage to everybody as she did to herself. The only reason we're talking about the general public perhaps getting less is once they said, we're not going to cover Clinton Evans, she did not let Clinton Evans operate her vehicle, and he went out and bought his own insurance. He wasn't prohibited from driving, he just wasn't included within her liability policy. He bought a $20,000 policy, and everybody in the state of Illinois runs the risk that people will buy only the minimum level of $20,000, and the way that you cure that is you buy underinsured motorist coverage that brings you up to the level you want, which is what Boon Jen Hounsabath was entitled to here, was the benefit of that underinsured motorist coverage that she bought and paid for. So I don't think she's slighting anybody here. When she got on the road, she was offering the exact same thing that everybody else was. Now, if she let him drive her car, perhaps then in that case we would have an issue, because now he's not covered, and under our argument she would be covered, but she didn't do that. She understood that the liability was excluded for him, and she didn't let him use the car. Let me then jump in. You know, when you brief this thing on summary judgment twice, in the appellate court, and then once to get here into the Supreme Court, and then again in the Supreme Court, I think there's a tendency to sort of get off into the weeds on all the minutiae, and I hope I didn't do that too much in my brief, but I thought for today I want to sort of refocus on a few basics. I think this case, I think, can be decided on four primary things, which is 317 of the Vehicle Code, which requires the safety and responsibility law requiring liability insurance under all policies. American Access v. Reyes, in which the court held that that is a mandatory coverage that could not be denied to a named insured. 5143A and A2, which are the mandatory coverages for uninsured and underinsured motorist coverage. And Barnes v. Powell, in which this court said that uninsured, underinsured coverage could not be denied to a named insured. And I'll start with 7317 in Reyes, because counsel made a point of saying he didn't think Reyes had any application here. And I want to talk about why I think it does. Both of them involve interpretation of the mandatory insurance statutes and what must be offered to a driver who purchases insurance in the state of Illinois. And both the trial court and the appellate court, I think correctly, found this case to be analogous. Basically, the Reyes case is one in which the insurance company said, We're going to sell an insurance policy to Anna Reyes, the sole insured under the policy. But it has an exclusion. It doesn't cover Anna Reyes. Now, that's not quite as ludicrous as it sounds, because it did cover another driver besides Anna Reyes. But the court held in that case the mandatory insurance statute does not let you include the primary coverage for the sole insured. That's what that's intended to protect. And this is really important, because one of counsel's key arguments is named driver exclusions are allowed in Illinois. That is not the case. They are allowed in some circumstances, and the court has ruled on that. The cases that counsel cited going back for many years are cases in which someone other than the named insured, by and large, were rejected for coverage. In other words, mom and dad bought insurance, and they excluded the son. They did not make him a named insured. And that is OK. But you can add an exclusion for somebody that is not required to be insured under the statute. But where it comes to a named insured, the court has held it differently. And that is, I think, really the key point of Reyes, is Reyes is a named driver exclusion case. There's no doubt that the exclusion was clear. It said, we will not cover Anna Reyes. They argued the same things in that case, saying, well, you have a contractual right to an insurance policy. You have your rights. You have freedom of contract. And the court said, all of that is true, but the mandatory statute means something. And it means that at least your named insured, you must cover them. I also think the timing of the Reyes decision is important. It was decided in 2013, long after the legislature had passed 2602 of the Vehicle Code. You may recall that 2602 is the statute in which talking about the insurance card and the fact that you have to list an excluded driver on that insurance card has been interpreted by the courts to be the legislature saying, yes, it's okay to have a named driver exclusion, because they referenced named driver exclusions there. However, 2602 happened in 1989, and the Reyes case came down in 2013. So clearly, that, despite the legislative statement about named driver exclusions, the court held in 2013 that, yes, even a named driver exclusion is not allowed when it denies the primary coverage to the named insured. And that is – and by the way, we're not saying that an exclusion can never be applied. There are cases in which exclusions have been applied. When there is coverage that exceeds the statutory minimum, that coverage can be excluded. There are people that are sometimes included on policies that perhaps don't have to be, and they can be excluded. And that would be the Phelan case, the St. Paul case, the Rockford case. These are all cases where, within a family, there were a couple of good drivers and perhaps one bad driver. I have to note that all the bad drivers were the same. But in any event, they excluded one driver, but they were not named insurers. And that is, I think, the key distinction. Mr. Parker, you heard my line of questioning with Mr. Stevens, right? Yes. I'd like to take it from the other direction. Let's use my ridiculous example. It's ridiculous because I don't think it was the intent of State Farm. It's ridiculous because they probably wouldn't attempt this. But you, as representing a plaintiff that wants to recover underinsured motorist coverage, if that case was brought against you, if Clint Evans was driving somewhere else at the same time that your client got in an accident, and humor me, if State Farm brought and said, no, no underinsurance motorist coverage because Clint Evans was driving a vehicle, is there anything in the plain language, the plain language, because we have to look at the language of the clause first. Before we start talking about, well, even as it applies to public policy and whether this particular clause should apply, because there's all different types of clauses, is there anything in that clause that you would argue to say, I know this isn't necessarily helping your case, but is there anything in that clause that you would use, the wording in that clause, to say, wait a minute, that doesn't apply to where he's driving somewhere else, just on the wording of that clause? I think the wording of that clause would say that there's no coverage under that situation. I mean, I'd argue it would be kind of ludicrous to say that that should apply in that situation or that anybody ever intended that. That would be the argument I would make. And how do you address Mr. Stevens when he says, well, the clause says, we shall not be liable in no liability or obligation of any kind shall attach to us for bodily injury, dot, dot, dot. Yeah, you know, he talked about that in terms of, well, only if there's liability. I think the liability that they're referring to in that exclusion is State Farm's liability, that State Farm will not be liable if Clinton's Athens is operating a vehicle. And I think you're quite right. I think that the language of it, it probably wasn't intended to be that broad, but it is terribly broad. Of course, our primary objection to it is that the legislature requires that they provide that coverage to Ms. Townsend's Athens. And maybe I'll take that opportunity to pivot to the question of the exclusion. You know, when you first read this exclusion, I think there's a tendency to look at it and say, I see, this is an exclusion of Clinton-Evans. But this is not an exclusion, or it's not exclusively an exclusion of Clinton-Evans. This is denying coverage to Eugen Townsend, the insurer. Now, if Clinton-Evans got into her car and was driving her car, then yes, I think this policy would deny coverage to Clinton-Evans as the driver of that car. So in that context, I think it does exclude Clinton-Evans. But in an underinsured and uninsured motorist context where Ms. Townsend-Bath is a passenger in the car, this exclusion is working to deny Eugen Townsend-Bath. She's the one who's being denied coverage. Clinton-Evans is not losing out as a result of this. He has his own insurance and his own issue. It's Eugen Townsend-Bath that is losing out on the benefit of the underinsured coverage. And that's what I think the statute prohibits. Would her premium be affected by the exclusion, an exclusion? In other words, would she pay less for the underinsured and uninsured coverage because Mr. Evans is excluded? She could. I mean, it is possible. I've seen that argument made in other cases, and I think counsel argued it as well. Basically, hey, look, she paid the price for this. My response to that would be, you know, State Farm's in a very good position to set premiums. And this is an exclusion that has never before been tested in courts. So the idea that this price that she paid was affected or would have been higher if they had included him I think is a little speculative. But the other thing is that the legislature requires it. There's a lot of reference or there's some reference in the case law to the fact that underinsured is fairly inexpensive coverage in the first place. And so if there is a premium increase, it's not likely that it would have been all that great. So your argument is it's against public policy to exclude the insured from the coverages that would protect the rest of the public, like the uninsured and uninsured. Yeah. But they could exclude or they can't exclude anybody. I mean, what could they do? You mean in terms of what they could do to exclude you? Right. Well, I think the law allows them to exclude Clinton Evans from liability coverage. I don't see that there's any problem with that, and I think the case law supports that. I also think that they could exclude Clinton Evans from uninsured motorist coverage if he was operating her vehicle and trying to make a claim under this policy. I think the place that this goes south is that when she bought liability coverage and she got liability coverage, 5143A says when you buy liability insurance, you also get uninsured motorist coverage, and you also get underinsured motorist coverage at the same level as long as you don't opt for a lower coverage. So I think that that's where there's a problem is when we get to the point of excluding Boone Jett Townsend. Thank you. I'll jump then to the issue of – I will also mention, though, with respect to 5143A and A2, I'll just give you – I'm going to read you a slightly abridged version of the statute. These are the two. It says, no policy insuring against loss resulting from liability shall be issued unless coverage is provided therein for the protection of the persons insured thereunder. And that's, I think, the important part is for the persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured vehicles. And then A2 goes on to say, and you've got to give the same coverage for underinsured. So that's the statute I'm referencing. And there is no 2602 exception that applies in this situation. 2602 of the Vehicle Code is the one that talks about this named driver exclusion, but it specifically is limited to liability. And so, as Justice pointed out – I'll just forget your name – that is something that the legislature has said applies in the liability context. But they have not made the same decision in the uninsured motorist context. And that is important because, although they don't – I don't think they do have to spell out every exclusion that can be used. I don't think that that is necessary, and I think this Court has said that's not necessary. But in this case, decisions like Barnes v. Powell came down in 1971. And so the legislature has had a long time to look at this, and if they felt that there should be an exclusion in the uninsured motorist context, they could have decided that. So, I'll talk for just a second about Barnes v. Powell, because I think that's probably the most important case on our side of this. That was a case in which the insured bought a policy of insurance from LaSalle Insurance. That policy had an exclusion that said that they would not cover uninsured motorist benefits or liability if you were in an insured vehicle. The plaintiff was injured while riding as a passenger in a car, and since liability was excluded, she then made a claim for uninsured motorist coverage. The insurance company pointed out the exclusion and said, hey, we have a clear exclusion here that says we're not going to cover our own insured vehicle. And the court said, well, that's too bad. 143A requires you to provide that coverage. And denying it to the insured would violate the intended public purpose of that statute. The goal here is to put the underinsured driver or uninsured driver in the same position they would have been if they were hit by somebody who had insurance or had insurance at the level that they had. And that decision has been followed in multiple cases. Again, by this court in Goodpasture, by other courts in Kerouac, in Illinois, in Casco versus Doran. Basically, what it says, what the court was saying is you can't sell the insured at the level. If they buy the liability insurance, the insured is entitled to those other coverages. And it's distinguishable from the cases that the defendant referenced, some of which also involved an insurer, because in each of those they were excluding a son or the bad driver in the family who was not a named insurer. And they went out of their way to say that. In fact, in Rockford Mutual, it's probably the best example of that because they say, yes, it's okay that they excluded the son because he was not an insurer under the policy. There was not a requirement here. But our result would have been different if he was a named insurer. So rather than being a case that goes against this, I think Rockford actually supports exactly what we're saying, which is the distinction is, is the person insured? On page 18 of the defendant's brief, it says, implicit in the appellate court's opinion and the argument advanced by the plaintiff in the trial court and the appellate court, is that the named driver exclusion cannot be applied to her claim for underinsured motorist coverage based upon any operation of any vehicle by evidence, but can be applied to anyone else who may make an underinsured claim. Is that your position? Well, I think that when they refused to cover him under this policy, her obligation was to make sure that then he didn't use her car. That's the thing that would then put the public at risk. And she did not do that. He then had the obligation, meaning Mr. Evans, to go out and buy insurance to comply with the law, which he did. The only thing that she did was she made a decision to get in the car with him, which I think she's allowed to do, and I think that her coverage, according to the legislature, should apply. With that, since I'm nearing the end of my time, I would say I would ask that you affirm the decision of the trial court and the appellate court. Thank you very much. Thank you. Rebuttal, Mr. Stevens? Yes. And before you start, with the last question I just asked Mr. Parker, explain how that would work, if their argument is that she would be excluded but anyone else could make an underinsured claim under the facts in this case. Is there any scenario where that would apply here? I can't think of any situation in which they would argue or agree that Ms. Kusinatis wouldn't be entitled to underinsured motorist coverage if Mr. Evans is operating any vehicle. And I don't think they disagree, and I don't think there's any basis to allege that a name driver exclusion involving someone who is not made insured under the policy isn't enforceable. I mean, the statute says it is. So what they're saying is, yes, name driver exclusions are enforceable, but not to a claim for underinsured motorist coverage by the named insured, the person who signed the endorsement who agreed to this exclusion. Would it make a difference if Mr. Evans were driving her car, your insurance car? I would suggest to you that if Mr. Evans had been driving her car, we would not be here today on an underinsured motorist claim. Their claim would be for uninsured motorist coverage. Their claim would be, she's a passenger in her own car. Ordinarily, she would have a liability claim against the responsible driver driving her car, but because he's excluded, now we have no insurance. Now we have an uninsured motorist claim. This is almost like judicial ping-pong. It doesn't fit here. We'll bounce it off here. We'll bounce it off over there. It shouldn't depend on whether it's liability coverage, uninsured motorist coverage, or underinsured motorist coverage. I tried to make that argument in my brief psyching Schultz, a case decided by this court just a few years ago. All of this coverage works in harmony. It all works together. And you shouldn't be able to say, okay, no coverage here, but we'll try this. If there's no coverage, there should be no coverage. I would just, Justice Thomas, I'd just like to address what you talked about early on in my argument, where you gave me those factual scenarios. And I would just point out that in Fowlers v. Munoz, a case decided by this court in 2010, Justice Fitzgerald said, we also need not speculate as to the myriad of other factual scenarios in which the exclusion might apply. The issue before us is much narrower. The issue is whether, as a matter of law, a person without a valid driver's license can have a reasonable belief that he or she is entitled to drive, that the exclusion can conceivably apply in other factual circumstances, does not mean that the exclusion is ambiguous as to unlicensed drivers. I would suggest that the same reasoning applies here. This exclusion is not ambiguous as to what occurred between Ms. Tusanavath and Mr. Evans. Whether Mr. Tusanavath, whether the coverage of Mr. Tusanavath was 100 miles away driving somebody else's car isn't really factually pertinent to this situation, and it doesn't need to be decided here in this case. Just a few points in response to counsel's arguments. He talks about how all of the cases that I cite in the context of uninsured under insured motorist coverage involve someone other than the actual named insured under the policy. That's true. But he can't cite one single case that says the opposite, that says a named driver exclusion can't be applied to the named insured. There's no case that says that. And as far as Ray's is concerned, his argument regarding Ray as being factually on point, it's not. It's not. This court has said repeatedly, case after case after case, that in order to invoke public policy, in order to strike down a reasonable restriction, a restriction on uninsured or underinsured motorist coverage, you can do that if you show that it violates the public policy of the state. But the public policy has to be well defined. It has to be specific. This court specifically defined public policy, and it is. It's to protect the general public. That public policy has no application to Ms. Kusunagi. It just doesn't. And it doesn't support her argument. There's some question regarding the significance of the fact that Mr. Evans is driving his own car. Our position is this. Mr. Evans has not become a worse driver or a better driver than any other driver. He was recognized and identified by State Farm as someone who did not want to provide insurance for him for any of the coverages because of his driving abilities or his lack thereof. The fact that he's driving his own car at the time of the occurrence does not change anything. Ms. Tunesavith knew. She signed that endorsement twice. She knew there was no coverage when he operated the vehicle, and yet she decided to get in that vehicle. Doesn't it seem different when if he'd been driving a car, another car, and she was not a passenger, you're still arguing that she has no uninsured motorist coverage. If he was driving a different car, she was driving her own car. How can she control that? If, fortuitously, she's driving through an intersection, and there's an intersection accident, and after the accident she goes, oh my gosh, it's Mr. Evans, and she makes an underinsured motorist claim, it would still be State Farm's contention that there is no coverage for her because they do not want to insure that risk. And that's simply... But doesn't that seem different than her agreeing to exclude any uninsured motorist coverage against Mr. Evans if she doesn't know he's going to be in that intersection at that time? It's a different factual situation than we have here where she got into the car. There's no question, Justice, that's a different factual situation, and there's no question that I wish you didn't ask me that question. It's a tough question to answer. But I have to be honest. There's no coverage whenever he's involved in an accident. It's just as simple as that. They just don't want to insure anything when Mr. Evans is involved. Did she agree to that? Well, unless there are any more questions for me, I thank you very much. Thank you. Case number 122558, the sooth of this versus State Farm will be taken under advisement as agenda number seven. Mr. Stevens and Mr. Parker, we thank you for your arguments. Ms. Harney, you are excused.